(36 Misc. Rep. 721.)

## In re KENNEDY.

(Supreme Court, Special Term, New York County. January, 1902.)

**1. POLITICAL CONVENTION—RIGHTS OF MAJORITY.**

Where the chairman of a nominating convention, at a time when there were many persons not members of the convention present, puts, before completion of the roll call, a motion to adjourn, and declares it carried on a viva voce vote, a majority of the delegates, who make affidavit that they voted against the motion, are entitled to continue the proceedings under a new chairman.

**2. SAME—EXPULSION OF MEMBERS.**

Where, after a nominating convention has been illegally declared adjourned by the chairman, the police forcibly removed from the hall a majority of the delegates who opposed the adjournment, and who attempted to continue in convention, such majority may adjourn to another hall, and a nomination made by them is regular.

**3. SAME—VACANCIES IN DELEGATIONS.**

Where a political party adopted a rule giving delegates at convention power to fill vacancies in the delegations it was not improper for the chairman of the convention to call a meeting three hours before the convention, on written notice, and appoint substitutes for delegates not appearing at that time, where no regular delegate appearing at the convention is thereby excluded.

**4. SAME—NOTICE OF PRIMARIES.**

An objection that it nowhere appears that notice of a primary election was posted as required by the primary election law cannot be first raised on a review of the determination of the board of elections as to the result of such primary.

In the matter of the application of Michael Kennedy to review the act of the board of election in determining that Perry Belmont was duly nominated as candidate of the Democratic party for the office of representative to congress for the Seventh congressional district. Motion denied.

Asa Bird Gardiner and Philip J. Britt, for petitioner.

Charles A. Collin and Wheeler H. Peckham, for Perry Belmont.

Terence Farley, for board of elections.

SCOTT, J. This is a proceeding instituted for the purpose of reviewing the determination of the board of elections that Perry Belmont was duly and legally nominated as the candidate of the Democratic party for the office of representative in congress for the Seventh congressional district of this state. The district comprises parts of three assembly districts within the county of New York and the county of Richmond. The convention to nominate a candidate was duly called by the proper authorities of the Democratic party, No. 184 Hudson street being designated as the place, and Saturday, December 21, 1901, at 8 o'clock p. m., as the time, for holding the convention. Michael C. Murphy was duly designated, pursuant to section 10 of the primary election law (Laws 1899, c. 473), as the person to call such convention to order. The place designated for the meeting of the convention was a room belonging to the Hickory Club, of which said Murphy is president. The whole number of delegates composing the convention was 278, of whom 138 were apportioned to the county of Richmond, and

74 N.Y.S.—24

140 to that portion of the district within the county of New York. The room in which the convention was called to meet was about 20 feet wide by 60 feet long. There were no seats in it, except a few chairs for the officers and newspaper reporters, the other chairs which had been in it having been removed some hours before the convention met. Admission to the room was by card, but these cards were apparently distributed with some degree of generosity, so that when the convention was called to order the room was overcrowded, there being some, and apparently many, persons present who were not delegates. Before the meeting of the convention suggestions that an adjournment should be taken were made by Murphy, but were not acceded to by those to whom the suggestion was made. The convention was called to order, and in due course was organized by the election of one Walsh as chairman and one Willis as secretary, with assistant secretaries from the several assembly district delegations. The credentials of the delegates were presented, and the roll of delegates begun to be called, commencing with those from Richmond county. Up to this point the proceedings had been harmonious, everything being done by unanimous consent. While the roll of the Richmond delegates was being called, there was considerable noise and confusion, during which several motions were made, which were not put. At length, however, and before the roll was completed, a motion was made to adjourn the convention until Monday, December 23d. Many delegates protested against the adjournment, and a protest was also made against entertaining any motion until the roll call had been completed. Disregarding these protests, the chairman put the motion, taking a viva voce vote thereon, declared the motion carried, and immediately vacated the chair, and left the hall accompanied by the secretary, Willis, and part of the delegates. A number of delegates remained in the hall, elected another chairman and secretary and proceeded to carry forward the work of the convention. The police, acting under instructions from Walsh, the chairman first elected, proceeded to forcibly clear the hall, whereupon the delegates who had remained after Walsh had left adopted a resolution adjourning the convention to No. 141 Hudson street, whither they proceeded and nominated a candidate,—the aforesaid Belmont,—and then adjourned. The delegates who left the hall with Walsh reconvened at No. 5 Battery place on the evening of December 23d, and undertook to nominate Joseph F. O'Grady. Both Belmont and O'Grady filed certificates of nomination with the board of elections. Objections were filed, and a hearing had, resulting in a decision of said board in favor of Belmont. It is to review that determination that this proceeding is brought.

The question involved is as to the regularity of the adjourned convention at which Belmont was nominated, for, if that convention was regular, and had power to nominate, the subsequent attempted nomination of O'Grady must necessarily fail. It cannot be doubted that a majority of a convention has the right to control and direct its actions. For all practical purposes it is the convention. That there was a majority of duly-elected delegates present

when the chairman, Walsh, entertained and put the motion to adjourn to the 23d is not questioned by any one. Was that motion properly put, and, if so, was it carried? To put it when and as it was put was certainly improper and irregular, for by the method adopted by Walsh it was very difficult, if not quite impossible, to determine whether it was carried or not. The first business of a convention held under the forms of law should be to determine the composition of the convention itself. This can only be done by ascertaining,—first, who are its accredited members; and, secondly, how many and which of these members are present. If then a vote is to be taken upon any question which may affect the validity of the result to be attained by the convention, that vote should be taken by a call of the roll, or by some other method, such as voting by delegations through a chosen spokesman, as will indicate clearly and unmistakably whether a majority have voted for or against the question. It appears that there were present in the room at this particular convention a number of persons; probably a large number who were not delegates, and who had no right to participate. Upon a viva voce vote all those people might vote, and it would be impossible for the chairman to determine how many votes on one side or the other of the question were given by delegates and how many by outsiders. His declaration, therefore, that the motion to adjourn had been carried, although it may have expressed his honest conviction that a majority of the voices were for adjournment, was not equivalent to a declaration that a majority of the delegates had so voted. No one had a right to vote upon the motion to adjourn except the delegates, and it could be carried only by the vote of a majority of the delegates present. Since, under the conditions then prevailing, and the manner in which the vote was taken, the chairman could not possibly tell whether a majority of the delegates present had voted in favor of the motion, his declaration of the result of the vote is worthless as evidence of the fact, and the board of elections was justified in seeking, as, the court is compelled to seek, other evidence upon the subject. Unless the motion to adjourn was properly carried, the chairman could not deprive the majority of the convention of its right to go on and complete the work for which it was convened by abandoning the chair and leaving the meeting. If the motion to adjourn had not, in fact, been carried, the convention had a right to go on with its work, and, if any of the officers abandoned their offices, it had the right to elect others in their places. From the affidavits filed with the board of elections and submitted on this motion it appears that at least 147 persons claiming to have been duly chosen delegates to the convention voted against the motion to adjourn, remained in the hall after the chairman had declared the meeting adjourned and left the hall, elected another chairman and secretary, and proceeded to make a nomination. This number constituted a majority of the delegates, and if they did in fact vote against the resolution to adjourn the motion was never legally carried, and they had a right to disregard the chairman's declaration regarding it, and to remain and continue the convention. But it is claimed

that all of the 147 persons who continued the convention were not duly chosen delegates. As to 121 of them—being 108 from Richmond county and 13 from New York county—no question is raised. It appears that at an unofficial primary election held in Richmond county on the 19th of December, 1901, 138 delegates to the congressional convention were elected. This election was held pursuant to a call issued by the Democratic county general committee of Richmond county, which adopted certain rules and regulations respecting such election, as authorized by chapter 473, Laws 1899. Among these rules and regulations was one reading as follows: "Seventh. That the power of substitution to fill any vacancy which may occur in the delegation be conferred upon the said delegates from the county of Richmond to the nominating convention aforesaid." The chairman of the Democratic general committee of Richmond county caused a written notice to be served on each delegate elected from that county, requesting him to attend a meeting of such delegates, to be held at 5 o'clock in the afternoon of the day appointed for the holding of the convention. One hundred and eight elected delegates attended this meeting, and substitutes were elected in the places of the elected delegates who failed to attend. When the convention met, two of the elected delegates were present who had not attended the meeting in the afternoon, and their names were replaced upon the roll of Richmond county delegates, the names of their substitutes being stricken off. It is objected that the persons thus duly chosen were not entitled to act and vote as delegates at the convention. Section 10 of the primary election law provides that the "rules and regulations of the party may provide the method of substituting delegates in a convention,"· and, as has been seen, the governing body of the party in Richmond county had adopted a rule providing for a substitution by a vote of the delegation. I see no reason why the delegation was not entirely justified in ascertaining in advance of the meeting what vacancies there would probably be, and making provision for filling them, so that when the convention met the delegation should be complete. Of course, an elected delegate was not bound to attend the preliminary meeting, and if, without attending it, he did attend the convention, he would have been entitled to participate. This, however, seems to have been understood, and those who did so attend were included in the list of delegates, their substitutes standing aside. The conclusion is that, as the substitutes who attended and participated in the convention were duly and legally chosen and entitled to act as delegates from Richmond county, and, with the 108 from Richmond county and 13 from New York county as to the legality of whose election no question is made, constituted a majority of the convention, and voted against the adjournment, the motion was not legally carried, the convention was not adjourned, and those who remained, being a majority, had a right to go on with the business of the convention, and make a nomination. As they were compelled by force to leave the room in which the convention had been called, they were justified in adjourning to any other convenient place.

An objection was made upon the argument that it did not appear that notice of the primary election in Richmond county for the election of delegates to the convention had been published, as required by section 4, subd. 5, of the primary election law, and hence that no delegates from Richmond county were lawfully elected. This objection, in my opinion, comes too late. It might have been made in the convention when the credentials of the Richmond county delegates were presented, but it was not. It was not presented to the board of elections. Non constat, if it had been, proof would have been forthcoming that the law had been complied with in this regard. And, finally, this objection is not specified in the petition upon which this proceeding is founded. It follows that the convention at which Perry Belmont was nominated for representative in congress was the lawfully constituted Democratic convention called for the purpose of making a nomination for that office.

The board of elections was right in the determination at which it arrived, and this motion must be denied.

Motion denied.